## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ROBERT JOHNSON, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT- CLASS ACTION-  FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| SOUTHCROSS ENERGY PARTNERS, L.P., SOUTHCROSS ENERGY PARTNERS GP, LLC, SOUTHCROSS HOLDINGS LP, SOUTHCROSS HOLDINGS GP LLC, BRUCE A. WILLIAMSON, DAVID W. BIEGLER, ANDREW A. CAMERON, NICHOLAS J. CARUSO, JR., JASON H. DOWNIE, JERRY W. PINKERTON, and RANDALL S. WADE, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Robert Johnson ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common units of Southcross Energy Partners, L.P. ("Southcross Energy" or the "Company") against Southcross Energy and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Southcross Energy, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger (the "Proposed

Merger") between Southcross Energy, and its affiliates, and American Midstream Partners, LP ("AMID") and its affiliates.[1]

2.      On October 31, 2017, the Board caused the Company to enter into an Agreement and Plan of Merger ("Merger Agreement"), pursuant to which each common unit of Southcross Energy will be converted into the right to receive 0.160 of a common unit of AMID (the "Merger Consideration).

3.      On January 10, 2018, in order to convince Southcross Energy's unitholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading Registration Statement on form S-4 (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for both companies; (ii) the valuation analyses performed by Southcross Energy's financial advisor, Jefferies LLC ("Jefferies"), in support of its fairness opinion; (iii) information relating to the Background of the Merger; and (iv) potential conflicts of interest faced by the Jefferies and other financial advisors.

_____

[1]      Concurrently with the execution of the Merger Agreement AMID and AMID GP entered into a Contribution Agreement with Southcross Holdings LP, a Delaware limited partnership ("Southcross Holdings LP") that indirectly owns 100% of the limited liability company interests of Southcross Energy Partners GP, LLC, ("Southcross Holdings GP" and together with Southcross Holdings LP, "Southcross Holdings"). Upon the terms and subject to the conditions set forth in the Contribution Agreement, Southcross Holdings will contribute to AMID and AMID GP its equity interests in a new wholly owned subsidiary ("SXH Holdings"), which will hold substantially all the current subsidiaries (Southcross Holdings Intermediary LLC, Southcross Holdings Guarantor GP LLC and Southcross Holdings Guarantor LP) and business of Southcross Holdings (the "Contribution" and, together with the Proposed Merger, the "Transaction").

5.     The special meeting of Southcross Energy unitholders to vote on the Proposed Merger is scheduled for March 27, 2018.  It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's unitholders prior to the March 27 unitholder vote so that they can properly exercise their corporate suffrage rights.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the unitholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Southcross Energy's unitholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an

effect in this District; (ii) Southcross Energy maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## **PARTIES**

10.    Plaintiffs is, and at all relevant times has been, a unitholder of Southcross Energy.

11.    Defendant Southcross Energy is a Delaware corporation and maintains its principal executive offices at 1717 Main Street, Suite 5200, Dallas, Texas 75201.    The Company provides natural gas gathering, processing, treating, compression and transportation services, and NGL fractionation and transportation services. It also sources, purchases, transports and sells natural gas and NGLs. Southcross Energy common units are listed and traded on the NYSE under the ticker symbol "SXE."

12.    Defendant Southcross Energy Partners GP, LLC is a Delaware limited liability company and the general partner of Southcross Energy.

13.    Defendant Southcross Holdings LP is a Delaware limited partnership. Southcross GP is a wholly-owned subsidiary of Southcross Holdings LP.

14.    Defendant Southcross Holdings GP is a Delaware limited liability company. Holdings is the general partner of Southcross Holdings LP.

15.    Individual Defendant Bruce A. Williamson is a director of Southcross Energy and is the Chairman of the Board, Chief Executive Officer, and Chief Technology Officer of the Company.

16.    Individual Defendant David W. Biegler is, and has been at all relevant times, a

director of the Company.

17.    Individual Defendant Andrew A. Cameron is, and has been at all relevant times, a director of the Company.

18.    Individual Defendant Nicholas J. Caruso, Jr. is, and has been at all relevant times, a director of the Company.

19.    Individual Defendant Jason H. Downie is, and has been at all relevant times, a director of the Company.

20.    Individual Defendant Jerry W. Pinkerton, and has been at all relevant times, a director of the Company.

21.    Individual Defendant Randall S. Wade is, and has been at all relevant times, a director of the Company.

22.    The parties identified in paragraphs 11-21 are collectively referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public unitholders of Southcross Energy (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As of November 6, 2017, there were 48,614,187 Southcross Energy common units outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public unitholders of Southcross Energy

will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)    whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

ii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their units regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with

respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.    Background and the Deal Announcement

25.    Southcross Energy provides natural gas gathering, processing, treating, compression, and transportation services, and natural gas liquid (NGL) fractionation and transportation services. The Company also sources, purchases, transports, and sells natural gas and NGLs. Its assets are located in South Texas, Mississippi, and Alabama. As of December 31, 2016, its assets consisted of gathering systems, intrastate pipelines, two natural gas processing plants, one fractionation facility, 20 compressor stations, and a treating system. Its gathering systems and intrastate pipelines include South Texas and Mississippi/Alabama.

26.    AMID owns, operates, develops, and acquires a portfolio of midstream energy assets. The Company provides midstream infrastructure that links producers of natural gas, crude oil, NGLs, condensate, and specialty chemicals to numerous intermediate and end-use markets. Its segments include gathering and processing, transmission, and terminals. Through its segments, it is engaged in the business of gathering, treating, processing, and transporting natural gas; gathering, transporting, storing, treating, and fractionating NGLs; gathering, storing, and transporting crude oil and condensates, and storing specialty chemical products. Its primary assets are located in some of the prolific onshore and offshore producing regions and various markets in the United States. Its gathering and processing assets are primarily located in the Permian Basin of West Texas; the Cotton Valley/Haynesville Shale of East Texas; the Eagle

Ford Shale of South Texas; the Bakken Shale of North Dakota; and offshore in the Gulf of Mexico. Its transmission and terminal assets are located in various markets in Alabama, Louisiana, Mississippi, and Tennessee, and in the Port of New Orleans in Louisiana and the Port of Brunswick in Georgia.

27.    On May 09, 2017, Southcross Energy announced first quarter 2017 financial results with Bruce Williamson stating:

> In the first quarter of 2017, we benefitted from companywide cost-savings initiatives started at the end of last year, including lower operational expenses at our facilities. When adjusting for the decrease in volumes from the planned shut-down of our Conroe facility, we are starting to see our processed gas volumes stabilize, which is consistent with the recent increase in rig counts in the Eagle Ford Shale.

28.    Following, on August 9, 2017, Southcross Energy released positive financial results for the second quarter 2017, beating earnings estimates by $0.19 per unit and increasing EBITDA by $1.5 million year-over-year. However, less than three months later, the Company announced the Proposed Merger for inadequate Merger Consideration.

29.    On November 1, 2017, Southcross Energy and AMID issued a joint press release announcing the Proposed Merger.  The press release stated, in relevant part:

> **American Midstream Partners to Acquire Southcross Energy Partners and Certain Assets of Southcross Holdings Forming $3 Billion Partnership**
>
> *Creates a fully integrated growth platform linking natural gas and NGL supplies to premium demand markets along the U.S. Gulf Coast*
>
> *AMID to host an investor conference today at 10:00 am Eastern Time*
>
> - Accelerates the transformation of AMID, furthering asset density and full value-chain participation within core operating areas

- Expands AMID's onshore gathering, processing and transmission services in the highly economic Eagle Ford Shale play and in the Southeast U.S. gas transmission market

- Expands AMID's commercial and operational capabilities across a high-quality asset platform

- Immediately accretive to 2018 distributable cash flow per unit (DCF/unit)

**HOUSTON, November 1, 2017** - American Midstream Partners, LP (NYSE: AMID) ("AMID" or "American Midstream") announced today that it has signed an agreement to acquire certain assets of Southcross Holdings, LP ("Southcross Holdings"), and has proposed to merge Southcross Energy Partners, L.P. (NYSE: SXE) ("SXE" or "Southcross Energy") (collectively, with Southcross Holdings referred to as "Southcross") into a wholly owned subsidiary of AMID in two separate transactions valued at approximately $815 million, including the repayment of net debt. As a result of the transactions, the pro forma partnership with an enterprise value of $3 billion is expected to generate annualized 2018 Adjusted EBITDA in excess of $300 million.

Lynn L. Bourdon, III, Chairman, President and Chief Executive Officer of American Midstream, commented, "This transaction accelerates our transformation into a fully integrated gathering, processing and transmission company focused in select core areas. The transaction also furthers our strategy of redeploying capital into higher growth businesses along with divesting non-core assets at attractive multiples."

"The addition of the Southcross assets allows us to capture the full midstream value chain in the very prolific Eagle Ford basin. The transaction represents a unique opportunity to expand our onshore gathering, processing and transmission services, linking supplies from the economically attractive Eagle Ford shale to high demand growth markets along the Gulf Coast."

Upon completion of the transaction, AMID will own and operate complementary and integrated midstream infrastructure representing:

- Approximately 8,000 miles of crude, natural gas and NGL pipelines

- Over 2.5 Bcf/d of natural gas transmission capacity
- Ten processing plants with over 1.0 Bcf/d of capacity

- Six fractionation facilities with 111,500 Bbl/d of capacity

- 35.7% of Delta House floating production facility in the deep-water Gulf of Mexico, and

- 6.7 million barrels of above-ground liquids storage capacity

"Given the compelling rationale for the acquisition, we anticipate that our combined unitholders should benefit from the partnership's increased scale, greater financial flexibility, and operational density. The integration and commercialization of the acquired assets will contribute to our growth and help establish solid distribution growth over time," Mr. Bourdon added.

"This combination with American Midstream provides significant benefits to all of Southcross' stakeholders," said Bruce A. Williamson, President and Chief Executive Officer of Southcross' general partner. "Private and public equity holders from both Southcross Holdings and Southcross Energy will be able to participate in a more diverse, sustainably capitalized company with units that offer immediate cash distributions and strong coverage. In addition, the revolver and term debt holders at both Southcross companies will be repaid in full at closing. We look forward to working with Lynn and his team during the transition to create value for our investors."

Southcross Holdings indirectly owns all of the equity interest in the general partner of SXE and indirectly owns gas pipeline, treating and fractionation facilities in the Eagle Ford Shale and elsewhere in South Texas. SXE is an integrated natural gas midstream services provider with assets primarily in the Eagle Ford as well as Mississippi and Alabama.

**STRATEGIC HIGHLIGHTS**

The acquisition of Southcross reinforces AMID's primary strategic objective of creating operational focus within a defined core asset footprint in high-growth U.S. basins. Strategic benefits of the transaction include:

- Builds Asset Density and Full Value Chain Participation: Accelerates the transformation of AMID into a fully integrated natural gas gathering, processing and transmission partnership. Also builds asset density and full value chain participation (gathering, treating, processing, fractionation, and NGL and gas marketing) within the Eagle Ford, the Southeast and the U.S. Gulf Coast.

- Strategically Located Assets Serving Strong Demand Markets: Facilitates capture of increasing regional demand for Eagle Ford production from new and expanding petrochemical complexes, LNG export projects, exports to Mexico and steadily growing industrial demand along the U.S. Gulf Coast.

- Increases Growth and Financial Profile: Provides a unique suite of assets with meaningful growth potential and clear operating and financial synergies. AMID expects the combined company to generate 2018 annualized Adjusted EBITDA in excess of $300 million, with a pro forma enterprise value of approximately $3 billion. AMID and Southcross expect to realize financial synergies of approximately $15 to $20 million annually within 18 months of closing.

- Increases Cash Flow Stability and Distributable Cash Flow Growth: Expected to generate meaningful cash flow growth from increasing upstream activity and growing downstream demand in AMID's core areas. Approximately 93% fixed-fee contracts underpin strong margins, while acreage dedications and captive production offer downside protection.

- Optimizes Capital Structure: Furthers AMID's strategy of deploying capital to areas with high long-term value. AMID anticipates divesting an additional $400 to $500 million of non-core asset sales to solidify its balance sheet and allocate growth capital toward high return, organic gathering and processing assets.

- Advances Repositioning of AMID: AMID's goal is to deliver for its investors a simplified business model and commercial orientation, a solidified and growing DCF/unit profile, and an expanded organic growth platform. The Southcross transaction represents an important milestone in furthering these objectives. The acquisition follows on the

- 11 -

successful execution of a number of significant divestiture and investment transactions over the past 18 months, activity which AMID plans to continue over the near term.

## TRANSACTION DETAILS

AMID has agreed to acquire equity interests in certain Southcross Holdings' subsidiaries that directly or indirectly own 100% of the limited liability company interests of the general partner of SXE and approximately 55% of the SXE common units by issuing 3.4 million AMID common units, 4.5 million new Series E convertible preferred units (the "Preferred Units"), options to acquire 4.5 million AMID common units (the "Options") and the repayment of $139 million of estimated net debt. The Preferred Units will be issued at a price of $15.00 per unit and may be paid-in-kind at the AMID common unit distribution rate at AMID's option for two years. AMID will have the right to convert the Preferred Units to AMID common units if the AMID 20-day volume weighted average price exceeds $22.50. The Options are American-style call options with an $18.50 strike price that expire in 2022.

Public unitholders of SXE will receive 0.160 AMID common units for each SXE common unit in a unit-for-unit merger, which is anticipated to have minimal, if any, tax recognition for such unitholders and which represents a 5% premium to the 20-day volume weighted average exchange ratio of AMID and SXE common units as of October 30, 2017. The SXE transaction is conditioned on the Southcross Holdings transaction, and until both transactions have closed AMID, Southcross Holdings and SXE will continue to operate as separate companies.

AMID expects the proposal to be attractive to public holders of SXE common units as it will permit them to participate in the future anticipated growth of AMID's businesses, including the benefit of AMID's cash distributions on common units, currently paying $1.65 per common unit annually.

As part of the transaction, AMID's sponsor, an affiliate of ArcLight Capital Partners, LLC, has agreed to transfer ownership of 15% of AMID's general partner and incentive distribution rights to Southcross Holdings.

In conjunction with the transaction, AMID will continue executing against its stated capital optimization strategy to deliver a strong pro forma balance sheet with substantial liquidity. AMID is

targeting an additional $400 to $500 million of non-core asset sales primarily related to its terminaling services segment. These proceeds, incremental debt financing and modest equity will allow the combined entity to target closing pro forma trailing debt to EBITDA of near 4.5 times with a 12- to 18-month goal of near 3.5 times and target pro forma liquidity of $300 to $400 million.

AMID expects the transaction to be single-digit accretive to DCF/unit in 2018 and 2019, approaching double-digit accretion in 2020. AMID expects to maintain a pro forma distribution coverage of 1.1 to 1.3 times.

The terms of the proposed merger with SXE will be subject to approval by a majority of the outstanding non-affiliated public common unitholders of SXE, and the transaction with Southcross Holdings and SXE will be subject to customary regulatory approvals and is currently expected to close in the second quarter of 2018.

### ADVISORS

Deutsche Bank acted as lead financial advisor and BofA Merrill Lynch acted as financial advisor to American Midstream. Gibson, Dunn & Crutcher LLP acted as legal counsel to American Midstream. RBC Capital Markets acted as lead financial advisor, Wells Fargo Securities acted as financial advisor and Locke Lord LLP acted as legal counsel to Southcross Holdings and Southcross Energy. Tudor, Pickering, Holt & Co acted as financial advisor and Jones Day acted as legal advisor to the Special Committee of Southcross Holdings. Jefferies LLC acted as financial advisor and Akin Gump Strauss Hauer & Feld LLP acted as legal advisor to the Conflicts Committee of Southcross Energy.

30.     Less than two weeks after announcing the Proposed Merger, Southcross Energy, again, announced positive financial results. The Company, again, outperformed earnings estimates for the third quarter of 2017 by $.014 per unit and increased EBITDA by $2 million year-over-year further evincing the inadequacy of the Merger Consideration.

## II.     The Proxy Is Materially Incomplete and Misleading

31.    On January 10, 2018, Southcross Energy filed the Proxy with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's unitholders to vote in favor of the Proposed Merger.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

32.    First, the Proxy fails to provide unlevered free cash flow projections[2] for both Southcross Energy and AMID. Unlevered free cash flows were utilized by Jefferies in their valuation calculations, including the discounted cash flow analyses performed for Southcross Energy, and are material to the Company's unitholders.[3] Indeed, investors are concerned, perhaps above all else, with the unlevered free cash flows of the companies in which they invest. Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation. Accordingly, the question that the Company's unitholders need to assess in determining whether to vote in favor of the merger is clear – is the Merger Consideration fair compensation given the expected unlevered free cash

---

[2]    Unlevered free cash flows are used to determine a company's enterprise value. The unlevered free cash flow allows investors to ascertain the operating value of a company independent of its capital structure. This provides a greater degree of analytical flexibility and allows for a clearer picture of the value of the company overall. For this reason, unlevered free cash flows are routinely used to value a company, especially in merger contexts.

[3]    Both sets of projections include "Distributable Cash Flow," however Jefferies used a distinct, undisclosed cash flow metric to perform the Southcross Energy Discounted Cash Flow Analysis.

flows?  Without unlevered free cash flow projections, the Company's unitholders were not able to answer this question and assess the fairness of the Merger Consideration.

33.    Both the Southcross Energy Projections and the AMID Projections included in the Proxy disclose EBITDA without including projections for unlevered free cash flows. EBITDA is not a sufficient alternative to unlevered free cash flows—as Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder.  Too many investors focus on earnings before interest, taxes, depreciation, and amortization.  That makes sense, only if you think capital expenditures are funded by the tooth fairy."[4]  Relying on EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls.  EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understand a company's value.[5]  As a result of these material differences between EBITDA and unlevered free cash flows, many experts recognize unlevered free cash flows as a much more accurate measure when it comes to analyzing the expected performance of a company.  Simply put, the unlevered free cash flow projections are material and merely supplying EBITDA renders the projections included in the Proxy misleading.

34.    Additionally, the Proxy references anticipated synergies associated with Proposed Merger, but fails to disclose what these synergies are, or what value they might have to unitholders. Indeed, the Proxy states, "[t]he success of the Merger will depend, in part, on the

---

[4]    Elizabeth MacDonald, *the Ebitda folly*, FORBES (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.

[5]    Cody Boyte, *Why EBITDA is Not Cash Flow*, AXIAL FORUM (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/.

ability of AMID to realize the anticipated benefits and synergies from combining the businesses of AMID, SXE and the other businesses acquired from Southcross Holdings." However, the Proxy entirely omits the value of these synergies, and the likelihood that they will be achieved. Jefferies does not mention having reviewed any potential synergies, and there is no reference to the synergies in their *Contribution Analysis*. The Proxy, also fails to include any Pro Forma Projections that might capture and illustrate these synergies. It appears that the Proxy only references synergies to tout their importance and describe their absence from financial statements.

35.    Moreover, the Proxy references numerous other sets of projections and/or financial models for both companies, but fails to disclose any of the various iterations. The Proxy fails to describe how these versions of financial information were changed, or the reason for so many updates in only an approximately four month period. Given the importance placed on internal management projections, these other, recent sets of projections are material to unitholders, so they can see if the current projections represent a fair value of the Company, or were altered in order to make the unsatisfactory Merger Consideration appear more attractive.

36.    The omission of the above-referenced projections renders the financial projections included in the Proxy materially incomplete and misleading. If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

37.     With respect to Jefferies' *Discounted Cash Flow* Analyses, the Proxy fails to disclose the following key components used in their analysis: (i) the inputs and assumptions underlying the calculation of the discount rate range of 15.6% to 16.6% used for AMID; (ii) the inputs and assumptions underlying the calculation of the discount rate range of 10.6% to 11.6% used for Southcross Energy; (iii)  the inputs and assumptions underlying the selection of the range of distribution yields of 11.0% to 12.0% used to calculate AMID's terminal value; (iv) the inputs and assumptions underlying the selection of the EBTIDA multiple range of 8.5x to 9.5x used to calculate Southcross Energy's terminal value; (v) the amounts of added cash and cash equivalents and subtracted total debt used to adjust Southcross Energy's enterprise value; (vi) the amounts of added cash and cash equivalents and subtracted total debt used to adjust AMID's enterprise value; and (vii) how the implied equity values of the two companies could be compared, without adjustment, when different forms of cash flows were used to calculate each.

38.     These key inputs are material to Southcross Energy unitholders, and their omission renders the summary of Jefferies's *Discounted Cash Flow* Analyses incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted

> cash flow value by tens if not hundreds of millions of dollars....This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

39.    With respect to Jefferies's *Selected Publicly Traded Companies* and *Selected Precedent Transactions* Analyses, the Proxy fails to disclose the individual multiples Jefferies calculated for each company and transaction utilized. The omission of these multiples renders the summary of these analyses and the implied equity value reference ranges materially misleading. A fair summary of companies and transactions analyses requires the disclosure of the individual multiples for each company and transaction; merely providing the range that a banker applied is insufficient, as unitholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied unit price ranges.

40.    Similarly, with respect to Jefferies' *Premiums Paid Analysis*, the Proxy fails to disclose the individual premiums used to prepare the comparative analysis. A fair summary of this analysis requires the disclosure of the individual premiums for each transaction observed. Merely providing a range is insufficient, as unitholders are unable to assess whether the banker summarized fairly, or, instead, emphasized only the figures that best present the premia in light of the Merger Consideration, i.e. as low as possible. The omission of this information renders the summary of this analysis set forth in the Proxy materially incomplete and misleading.

41.     With respect to the *Background of the Merger*, the Proxy fails to provide a complete and accurate account of the events leading up to the Proposed Merger, including, amongst numerous others, critical information regarding other offers the Company received during the sales process. Once defendants travel down the road of partial disclosure of the history leading up to the Proposed Merger, they have an obligation to provide the unitholders with an accurate, full, and fair characterization of those historic events. The Proxy is selective in disclosing values and details of the offers received for Company. For example, the Proxy states that it received a proposal from Party D on October 4, 2017, but fails to disclose what the financial terms of the offer were. Unitholders would undoubtedly find offer details, especially price, material in deciding how to vote their units, as such information speaks directly to the value of the Company. In order to be materially complete and not misleading, the Proxy must disclose a more complete record of the *Background of the Merger*.

42.     Further, the Proxy indicates that Southcross Energy entered into confidentiality agreements with numerous parties that expressed interest in the Company, at least 26, but failed to disclose whether such agreements contained standstill and "don't ask don't waive" ("DADW") provisions, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect. Such information is material to Southcross Energy unitholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal.  The failure to disclose the existence of DADW provisions creates the false impression that any of the parties who signed confidentiality agreements could have made a superior proposal. That's not true. If those confidentiality agreements contained DADW provisions, they could only make a superior proposal by breaching the agreement, because in order to make the superior proposal, they would have to ask for a

waiver, either directly or indirectly. Thus, the omission of this information renders the descriptions of the confidentiality agreements the Company entered into materially incomplete and misleading. Any reasonable unitholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

43. Finally, the Proxy states that in the past, Jefferies has provided financial advisory services to AMID and may continue to do so and has received, and may receive, fees for the rendering of such services. However, the Proxy fails to state the timing, nature, or amount of compensation received for such services. The failure to disclose this information is a material omission and renders the Proxy misleading to Southcross Energy unitholders. Moreover, these types of dealings place Jefferies' interests on both sides of the Proposed Merger. The failure to specify the exact timing and nature of their services rendered, or amount of money Jefferies received and may continue to receive from AMID while acting as Southcross Energy's financial advisor is a serious area of concern for Southcross Energy unitholders.

44. The Proxy is also silent regarding any of the past, current, or future dealings of RBC Capital Markets, LLC ("RBCCM"), the financial advisor to Southcross Holdings, Wells Fargo Securities, LLC ("Wells Fargo"),[6] the co-financial advisor to Southcross Holdings, and Tudor Pickering Holt & Co. ("TPH" and together with RBCCM and Wells Fargo, the "Other Advisors"), the financial advisor to the A-II Special Committee of Southcross Holdings, with either Southcross Energy, and any of its affiliates, or AMID, and any of its affiliates. Given that

---

[6]    Wells Fargo, and their affiliate Wells Fargo Bank, N.A., disclose some of their ongoing relationships with parties on both sides of the Transaction, but fail to give full details of the services they provide/have provided and the amount of compensation received, or to be received, for those services. This information is material to Southcross Energy unitholders.

the Other Advisors were financial advisors to affiliates of Southcross Energy, and considering their active involvement in the process of the Transaction, the Other Advisors must disclose any potential conflict(s) of interest. At the very least, they must describe any material relationship that existed during the past two years, or is mutually understood to be contemplated, and any compensation received, or to be received, as a result of those relationships. The failure to disclose this information is a material omission.

45.    In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special unitholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 240.14a-9 Promulgated Thereunder)**

46.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to

- 21 -

section 78l of this title." 15 U.S.C. § 78n(a)(1).

48.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

49.    The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

50.    Defendants have issued the Proxy with the intention of soliciting unitholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information concerning: (i) financial projections for both companies; (ii) the valuation analyses performed by Southcross Energy's financial advisor, Jefferies LLC ("Jefferies"), in support of its fairness opinion; (iii) information relating to the Background of the Merger; and (iv) potential conflicts of interest faced by the Jefferies.

51.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

52.    The Individual Defendants knew or were negligent in not knowing that the Proxy

is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that the Jefferies reviewed and discussed their financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Jefferies as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review the Jefferies's analyses in connection with their receipt of the fairness opinion, question Jefferies as to the derivation of its fairness opinion, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

53.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of

the Company's financial projections.

54.    Southcross Energy is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

55.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

56.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.    The Individual Defendants acted as controlling persons of Southcross Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Southcross Energy, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

60.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63.     Plaintiff and the Class have no adequate remedy at law.  Only through the

exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from proceeding with the unitholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: February 5, 2018                    Respectfully submitted,

                                           **BALON B. BRADLEY LAW FIRM**

**OF COUNSEL**

                                           _/s/_____
**MONTEVERDE & ASSOCIATES PC**             Balon B. Bradley
                                           TX Bar No. 02821700
Juan E. Monteverde                         11910 Greenville Ave, Suite 220
The Empire State Building                  Dallas, TX  75243

350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

TEL. (972) 991-1582
FAX (972) 755-0424
balon@bbradleylaw.com
*Attorneys for Plaintiff*